UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HALLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  18 C 8146 |
| v. | ) | |
| | ) | Judge Guzmán |
| MARK T. ESPER, Secretary of the Army, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

**Introduction**

Plaintiff James Hallman, a former U.S. Army employee residing outside of the Northern District of Illinois, has filed a complaint claiming that he was forced to retire in violation of the the Americans with Disabilities Act and the Rehabilitation Act and in retaliation for engaging in EEO-protected activity while stationed in Germany.  None of the alleged acts occurred in this district and there is nothing else showing that venue is otherwise proper in the Northern District of Illinois.  In addition, Hallman failed to exhaust his administrative remedies under the Rehabilitation Act and the ADA on its face is inapplicable to federal employees like Hallman. Hallman also fails to state a claim for retaliation because the alleged discrimination occurred months before Hallman ever engaged in EEO-protected activity.  Dismissal of the complaint is therefore appropriate under Fed. R. Civ. P. 12(b)(3) and 12(b)(6).

## Background[1]

James Hallman was formerly employed as a deputy registrar of vehicles with the Department of the Army, U.S. Army Europe Vehicle Registry Organization, in Sembach, Germany. Compl., ¶¶ 16, 17. In July 2015, Hallman's supervisor allegedly told him that Hallman's position would be eliminated unless Hallman retired. *Id.*, ¶ 30. Hallman requested retirement and was authorized to retire on September 22, 2015. *Id.*, ¶ 35.

Hallman contacted an Army EEO counselor on October 28, 2015, claiming that he had been forced to retire from his Army position in Germany because of his age. Ex. A at 1-2. Hallman later filed a formal EEO complaint of age discrimination with the Army reiterating those same claims on January 18, 2016. Ex. B at 1-2. Hallman did not claim before the EEO counselor or in his formal EEO complaint that he had been discriminated against on the basis of disability or in reprisal or retaliation for previous EEO activity. Ex. A at 1-2; Ex. B at 1-2.

After a full investigation of Hallman's EEO claims, the Army on September 12, 2018, issued a final agency decision concluding that Hallman had not been subject to illegal age discrimination. Ex. C at 1. On December 11, 2018, Hallman filed the complaint in this case alleging for the first time that his retirement from his Army position in Germany in 2015 due to illegal handicap discrimination and retaliation in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 (Rehab Act). Comp., ¶ 1. Unlike what was claimed

---

[1] The court may consider matters outside of the pleadings when deciding a motion to dismiss for improper venue under Rule 12(b)(3). *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (courts may consider matters outside of the pleadings in deciding a venue motion); *Brne v. Inspired ELearning*, 2017 WL 4263995, *2 (N.D. Ill. Sept. 26, 2017).The court may also consider the underlying administrative EEO record for purposes of deciding the motion to dismiss under Rule 12(b)(6) for failure to exhaust administrative remedies. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013); *Atiogbe v. Brennan*, 2017 WL 2215017, *1 (N.D. Ill. May 19, 2017).

and investigated during the administrative EEO process, the complaint in this case does not alleged that Hallman's retirement was the result of illegal age discrimination. *Id.*

Hallman's district court complaint does not allege that he worked for the Army in the Northern District of Illinois during any time relevant, nor does it allege that he ever resided within district. Instead, Hallman's complaint alleges that the court has personal jurisdiction over the Army and that venue is proper in the Northern District of Illinois because the Army "retains and administers Plaintiff's employment records in Illinois." Compl., ¶¶ 4-5. But the Army retains and administers Hallman's employment records not in this district but at the National Personnel Records Center, (Civilian Personnel Records) 1441 Boulder Boulevard, in Valmeyer, Illinois. Ex. D, ¶ 2; https://www.archives.gov/personnel-records-center/civilian-non-archival. Valmeyer, Illinois, is more than 330 miles south of Chicago and is located in Monroe County, Illinois. Ex. D, ¶ 2; https://en.wikipedia.org/wiki/Monroe_County,_Illinois. Monroe County is located within the *Southern* District of Illinois. http://www.ilsb.uscourts.gov/southern-district-illinois-case-assignment-map.

## Argument

### A.    The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(3) for Improper Venue.

Hallman's complaint should be dismissed for improper venue under Rule 12(b)(3) because it was improperly filed in the Northern District of Illinois, a jurisdiction that has no connection to any of the events alleged therein.

Venue is not proper in a Title VII or Rehabilitation Act case if a plaintiff brings suit in a jurisdiction that does not satisfy one of the venue requirements in 42 U.S.C. § 2000e–5(f)(3); 29 U.S.C. § 794(a)(1); *Pryor v. United Airlines,* 2013 WL 4506879, * 3-4 (N.D. Ill. Aug. 23, 2013); *Zughni v. Pena*, 851 F.Supp. 300, 302-03 (N.D. Ill. 1994). In either a Title VII or Rehabilitation

Act case, 42 U.S.C. § 2000e–5(f)(3) overrides any other venue provision governing actions in federal court. 29 U.S.C. § 794(a)(1); *McCarthy v. KFC Corp.*, 1984 WL 1048, *1 (N.D. Ill July 20, 1984); *see also Dey v. Innodata*, 2018 WL 497283, *3 (N.D. Ill. Jan. 22, 2018) (concluding that cases invoking Title VII or the ADA are subject to Title VII's venue provisions and not the general venue provisions of 28 U.S.C. § 1391).  Thus, venue for a Rehab Act or Title VII action is proper in the district where: (1) "the unlawful employment practice is alleged to have been committed;" (2) "the employment records relevant to such practice are maintained and administered;" or (3) "the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(f)(3); *Pryor v. United Airlines,* 2013 WL 4506879 at *3; *McCarthy v. KFC Corp.*, 1984 WL 1048 at *1.

Here, there is no question that Hallman was ever employed in this district (element three) or that the alleged discrimination did not occur within this district (element one).  On the contrary, Hallman alleges in his complaint that he was employed with the Army in Germany, and that he was allegedly discriminated against at his Army workplace in Germany by his supervisor at that location.  Compl., ¶¶ 16, 17, 30.  And while Hallman alleges that the Army "retains and administers Plaintiff's employment records in Illinois." (Compl., ¶¶ 4-5), that is not enough to establish venue in *this* district (the Northern District of Illinois) because the Army retains and administers Hallman's employment records at the National Personnel Records Center in Valmeyer, Illinois, which is in Monroe County and within the *Southern* District of Illinois.   Ex. D; http://www.ilsb.uscourts.gov/southern-district-illinois-case-assignment-map.   Because Hallman has failed to file his complaint in the proper district, there is no venue, and dismissal under Rule 12(b)(3) is appropriate.

**B.     The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.**

Hallman's complaint may also be dismissed for failure to state a claim due to his failure to exhaust his administrative EEO remedies prior to filing suit under the Rehab Act and the ADA.

As an initial matter, Hallman cannot file suit under the ADA against the Army simply because the Army and other federal agencies are not subject to suit under that provision.   The exclusive remedy for *federal* employees who suffer disability discrimination in the course of their employment is found in Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.  *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005).   This is usually a distinction with no practical difference because the Rehab Act instructs courts to apply ADA standards in Rehab Act cases, 29 U.S.C. § 791(f), and to apply Title VII procedures and remedies.   29 U.S.C. § 794a(a)(1). Hallman's ADA claims against the Army should therefore be dismissed.

More importantly, Hallman's Rehab Act claims are barred because it is clear that he never exhausted or even raised those claims during the administrative EEO process.  Instead, it is clear that Hallman only ever complained of illegal age discrimination during each phase of his administrative EEO proceedings.  Ex. A at 1-2; Ex. B at 1-2.  And because Hallman only ever raised *age* discrimination claims during the EEO process, the Army's final agency decision reflects only the investigation of those claims.   Ex. C at 1.

Federal employees like Hallman complaining of employment discrimination under the Rehab Act or Title VII must exhaust their administrative EEO remedies prior to filing suit.  *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).   Administrative exhaustion serves two purposes: (1) to promote resolution of the dispute by settlement or conciliation, and (2) to ensure that the sued employers receive adequate notice of the charges against them.  *Id.* at 691.  Here, for example, in contrast to the district court complaint's allegations that Hallman was forced to retire because his

depression-related sick leave requests were denied by his supervisor (Compl., ¶¶ 24-30), Hallman during the administrative EEO process consistently claimed that his replacement by a younger man *after* his retirement showed that he had been forced into retirement due to his age.  Ex. A at 1-2; Ex. B at 1-2; Ex. C.  As such, Hallman's complaint turns the purpose of administrative exhaustion on its head by suggesting that the court should consider discrimination claims that were never administratively investigated or exhausted.  Compl., ¶ 41.

Finally, Hallman cannot state a claim for retaliation because his discrimination claim, *i.e.,* that he was allegedly constructively discharged into a forced retirement in mid-July 2015, happened more than three months *before* Hallman allegedly engaged in the protected activity of contacting an EEO counselor at the end of October 2015.  Compl., ¶¶ 60-64, 67.  *Durkin v. City of Chicago*, 341 F.3d 606, 614–15 (7th Cir. 2003) ("It is axiomatic that a plaintiff [must] engage in statutorily protected activity before an employer can retaliate against [him] for engaging in statutorily protected activity. . . . An employer cannot retaliate if there is nothing for it to retaliate against."  Therefore, the court may dismiss Hallman's complaint for failure to state a claim of employment discrimination under the Rehab Act or the ADA and for failure to state a claim for retaliation in violation of those provisions.

## Conclusion

For these reasons, the court should dismiss the complaint.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Ernest Y. Ling
    ERNEST Y. LING
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5870
    ernest.ling@usdoj.gov

Exhibit A

| **EEO COUNSELOR'S REPORT**<br>For use of this form see AR 690-600, the proponent agency is OSA. | **1. DA DOCKET NUMBER**<br>AREURHPFZ15OCT04186 |
|---|---|

### PRIVACY ACT STATEMENT (5 U.S.C. §552a)

| | |
|---|---|
| **AUTHORITY:** | Public Law 92-261 |
| **PRINCIPAL PURPOSE:** | Used for processing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical and/or mental disability, or reprisal by Department of the Army civilian employees, former employees, applicants for employment and some contract employees. |
| **ROUTINE USES:** | Information will be used *(a)* as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; *(b)* to respond to general requests for information under the Freedom of Information Act; *(c)* to respond to requests from legitimate outside individuals or agencies *(White House, Congress, Equal Employment Opportunity Commission)* regarding the status of a complaint or appeal; or *(d)* to adjudicate complaint or appeal. |
| **DISCLOSURE:** | Voluntary, however, failure to complete all appropriate portions of this form may lead to delay in processing and/or rejection of complaint on the basis of inadequate data on which to continue processing. |

### SECTION I - PRE-COMPLAINT INTAKE INTERVIEW

| 2. NAME OF AGGRIEVED *(Print-Last, First, Middle Initial)* | 3. SSN | | 4. JOB TITLE | |
|---|---|---|---|---|
| Hallman, James | | | Deputy Registar | |

| 5. PAY PLAN/SERIES/<br>GRADE<br><br>NF-04/301 | 6. DUTY ORGANIZATION *(Complete address including office symbol)*<br>Registration Motor Vehicles<br>Sembach, Bldg 216<br>Room 103<br>APO, AE 09364      schatz-schatz@hotmail.co.uk |
|---|---|

| 7. WORK TELEPHONE | 8. HOME TELEPHONE<br>015144959370 | 9. HOME ADDRESS<br>Eichenstrasse 36, 76681 Sembach |
|---|---|---|

| 10. DATE OF ALLEGED<br>DISCRIMINATORY ACTION<br>*(YYYYMMDD)*<br>20150706 | 11. 45THCALENDAR DAY<br>AFTER EVENT *(YYYYMMDD)*<br>20150820 | 12. REASON FOR DELAYED CONTACT BEYOND 45 DAYS, IF APPLICABLE<br>Placed on Administrative Leave 17 Sep 15, afraid if he came to EEO he would be placed on AWOL until his retirement date of 31 Oct 15 |
|---|---|---|

| 13. DATE OF INITIAL<br>CONTACT WITH EEO<br>OFFICIAL *(YYYYMMDD)*<br>20151028 | 14. 30TH CALENDAR DAY<br>AFTER INITIAL CONTACT WITH<br>EEO OFFICIAL *(YYYYMMDD)*<br>20151127 | 15. 90TH CALENDAR DAY AFTER<br>INITIAL CONTACT WITH EEO OFFICIAL<br>*(YYYYMMDD)*<br>20160126 | 16. DATE COUNSELING<br>EXTENSION GRANTED, IF<br>APPLICABLE *(YYYYMMDD)* |
|---|---|---|---|

| 17. DATE PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED<br>*(YYYYMMDD)*<br><br>20151028 | 18. PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED:<br><br>Telephonically ☐   In-Person ✓   Other *(facsimile/e-mail)* ☐ |
|---|---|

### SECTION II - ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED *(Complete address including office symbol)*

Registration Motor Vehicles
Sembach, Bldg 216
Room 103
APO, AE 09364

### SECTION III - RESPONDING MANAGEMENT OFFICIAL *(s)* INFORMATION *(Include name, complete work address and phone number if known.)*

Mr. Thomas Lorenzini, Registrar
USAREUR Vehicle Registration Motor Vehicles
Sembach, Bldg 216
Room 103
APO, AE 09364
thomas.k.lorenzini.naf@mail.mil
06111435422001

**DA FORM 7510, FEB 2004**

| SECTION IV - BASIS OF COMPLAINT *(Identify specific race, color, religion, national origin, disability, age, sex, or reprisal if alleged.)* |

☐ RACE _____ ☐ COLOR _____ ☐ SEX ☐ Male ☐ Female

☑ AGE 68 _____ DATE OF BIRTH _____ ☐ NATIONAL ORIGIN _____

☐ RELIGION _____ DISABILITY ☐ Mental _____ ☐ Physical _____

☐ REPRISAL _____

*(Date(s) of prior EEO activity)*

| SECTION V - MATTER(s) GIVING RISE TO COMPLAINT *(Specify who, what, where, and when.) (Use additional sheet of paper if necessary.)* |

Was the aggrieved discriminated against on basis of age when the following event occurred:

On 6 July 2015, Mr. Hallman was informed by Mr. Lorenzini that he was going to do a Business Based Action (BBA) and eliminate his position if he did not retire.

On a an undisclosed date in November he found out that his position was not eliminated and a younger man was placed in the position.

The aggrieved stated he returned to work on 6 July 2015, after being out on sick leave from 26-June-2-July-2015 he was severely depressed and grieving over the loss of his wife 2 years earlier. He stated Mr. Lorenzini came into his office and told him he was going to BBA his position if he did not retire.

The aggrieved stated he went on leave to the States beginning 7 July 2015 and returned 24 July 2015. He stated because he thought his job was being eliminated he put in his asked NAF CPAC about retirement paperwork on 27 July 2015. He stated he talked with Mr. John Owens, NAF CPAC and Mr. Owens completed his packet for retirement. He stated decided to submit his retirement packet for 30 November 2015.

The aggrieved stated on 10 August 2015, he went to NAF CPAC to meet with Mr. Owens and sign the retirement documents, he was told he had to call Mr. Lorenzini. He stated Mr. Lorenzini stated "Quit playing games- if you don't submit your retirement for 31 October 2015, I will BBA your position and place you on Administrative Leave Without Pay (AWOL)". He stated he agreed to change his retirement date from 30 November 2015 to 31 October 2015 because he was not financially able to be on AWOL. He stated he returned to NAF CPAC on 11 August 2015 and signed the retirement packet.

The aggrieved stated his last day of work was 16 September 2015, he was on paid Administrative Leave 17 September 2015 until his retirement. He stated the reason he did not come to EEO earlier was because he was afraid of being placed on AWOL, once Mr. Lorenzini, found out that he had been to the EEO Office. The aggrieved stated he came to the EEO Office on 28 October 2015, since Mr. Lorenzini could no longer take any additional action to impact his pay.

The aggrieved stated he was informed that Mr. Lorenzini did not BBA his position, but hired a younger man to replace him.

| SECTION VI - RELIEF SOUGHT |

To be reemployed at another duty position, same grade and pay in another organization or 2 1/2 years pay and benefits.

*DA FORM 7510, FEB 2004*

## SECTION VII - RIGHTS AND RESPONSIBILITIES

THE AGGRIEVED WAS PROVIDED WITH THE AGGRIEVED PERSON'S RIGHTS AND RESPONSIBILITIES NOTICE AND WAS SPECIFICALLY ADVISED OF THE FOLLOWING:

☑ The basis(es) for filing pre-complaint, formal complaint, and/or class complaint, and of right to file a formal complaint of discrimination.

☑ The pre-complaint, formal and/or class complaint process.

☑ The 45-day calendar requirement from effective date of personnel action or of the date of the matter alleged to be discriminatory.

☑ The role of the EEO counselor, including that the counselor is not an advocate for either the aggrieved person or the agency and acts strictly as a neutral.

☑ The activity's Alternate Dispute Resolution (ADR) Program and right to elect either ADR (if offered) or traditional EEO counseling.

☑ The right to remain anonymous during the pre-complaint process.

☑ The right to representation throughout the complaint process.

☑ Responsibility of the aggrieved to notify the EEO office in writing of any change in address and/or phone number.

☑ Responsibility of the aggrieved to notify the EEO office in writing of non-attorney or attorney representation, including address and phone number.

☑ The possible election requirement between a negotiated grievance procedure, MSPB procedure and the EEO complaint process.

☑ The election options in age and wage-based discrimination complaints.

## SECTION VIII - ELECTION OF REPRESENTATION

☐ ATTORNEY   ☐ NON-ATTORNEY   ☐ NON-REPRESENTATIVE

| NAME OF REPRESENTATIVE | | ADDRESS | |
|---|---|---|---|
| TELEPHONE NUMBER | FAX | | E-MAIL |

## SECTION IX - ALTERNATE DISPUTE RESOLUTION (ADR)

☐ Matter determined not appropriate for ADR

_(Aggrieved must sign and date)_

☑ Matter determined appropriate for ADR       **BF**   20151203
_(EEO Officer must initial and date)_

☑ Wishes to participate in ADR, if offered       **BF**   20151203
_(EEO Officer must initial and date)_

Date of written offer of ADR

Date of Agreement to Participate in ADR

Name of assigned ADR facilitator/mediator

Date ADR facilitator/mediator assigned

**Result of ADR:**

☐ ADR was successful. Negotiated settlement agreement, signed on _____ (YYYYMMDD), is attached.

☑ ADR was not successful. The aggrieved was issued a Notice of Right to File a Formal Complaint of Discrimination on 20151215 (YYYYMMDD) and notified of requirement to file a formal complaint within **15 calendar days** after receipt of Notice of Right to File. The aggrieved was provided a DA Form 2590, Formal Complaint of Discrimination.

## SECTION X - TRADITIONAL EEO COUNSELING (EEO official to complete only those which apply.)

☐ Election of traditional counseling.
Name of assigned EEO counselor

Date EEO counselor assigned

☐ Election to remain anonymous.

☑ Election to waive right to remain anonymous.

☐ Declined to pursue matter under Title VII.

## SECTION XI - WITNESS INQUIRY

a.  Witness Information  *(List all witness data here. Number sequentially and include name, title, organization, phone number, and relevant basis(es) information.)*

Mr. Thomas Lorenzini, Registrar
thomas.k.lorenzini.naf@mail.mil,06111435422001

b.  Witness Statements

Mr. Lorenzini stated on 6 July 2015, he did not tell Mr. Hallman that if he did not resign he would Business Base Action (BBA) his position, because Mr. Hallman was not a work the week of 6 July-10 July 2015. He stated he does not recember the date but he did mention to Mr. Hallman the he would look into doing a BBA seperation to reduce cost and to provide Mr. Hallman a way to avoid an emparrassing seperation.

Mr. Lorenzini he talked to Mr. Timothy Mattox, Human Resources to ask him to speak with Mr. Ronald Stabler, Chief NAD CPAC, who informed him that a BBA would require the approval of his next higher Headquarters, OPM USAREUR. He stated he discussed the BBA with LTC Sampson, Deputy Provost Marshal USAREUR who took the matter to COL Horton, Provost Marshal. He stated COL Horton did not want to BBA the position.

Mr. Lorenzini stated Mr. Hallman contacted Mr. Mattox on 7 July 2015, to talk about retirement and stated "I'm tired of this and I am going to retire". He stated on 20 July 2015 Mr. Hallman as Mr. Mattox for a retirement calculation with a retirement date of 30 September 2015. The retirement projection was issued to Mr. Hallman on 23 July 2015. Mr. Lorenzini stated he agreed to the 30 September 2015 retirement date, but he never told Mr. Hallman that he would place him on Administrative Leave 90 days from the time he submitted his paperwork.

Mr. Lorenzini stated he agreed to Mr. Hallman chaning his retirement date from 30 September 2015 to 31 October 2015 to give him time to take care of personal issues. Mr. Lorenzini stated he had no work issues because he claened out his office prior to him going on Administrative Leave beginning 17 September 2015.

Mr. Lorenzini stated when Mr. Hallman went to NAF CPO on or about 10 August 2014, he tried to change his retirement date from 31 October 2015 to 1 December 2015. Mr. Lorenzini stated he told Mr. Hallman that he agreed to retire on 1 November 2015 and if he changed it he would not carry him on Administrative Leave for that period; he would either have to work or go on leave without pay. Mr. Lorenzini stated Mr. Hallman elected to submit his paperwork with a retirement date of 1 November 2015.

Mr. Lorenzini stated there was never a BBA initiated, Mr. Hallman voluntarily retired. Mr. Lorenzini stated Mr. Hallmans' replacement was hired because of his competency and ability to do the job and nothing to do with him being a younger man.

Mr. Lorenzini stated he did not discriminate against Mr. Hallman based on age.

| SECTION XI - WITNESS INQUIRY *(Cont'd)* |
|---|

Witness Statements *(Cont'd)*

c. Documents Reviewed *(List)*

Return to work slip dtd 26 June 2015 for Mr. Hallman
Statement from Timothy Mattox reference 7 July 2015
Letter to Kaiserslautern Rathus dtd 29 July 2015 from Mr.Lorenzini
MFR dtd 11 August 2015 signing of retirement packet
DA3434-Notification of Personnel Action (Separation/Retirement) effective date 31 October 2015
SF50 (Separation/Retirement) authorized by Thomas Lorenzini on 22 September 2015, effective date 31 October 2015
Timeline of events from Mr. Hallman dtd 30 November 2015
Response to allegations from Mr. Lorenzini received 10 December

d. Reviewed Documents Revealed

| SECTION XII - OUTCOME OF PRE-COMPLAINT INQUIRY |
|---|

☑ Resolution was not accomplished, therefore, I conducted the final interview with aggrieved on  20151214  *(YYYYMMDD)* at which time I informed the aggrieved of the full scope of my inquiry and the reason *(s)* articulated by management for action *(s)* taken. I provided the aggrieved with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination.  The aggrieved is aware of the requirement to file a formal complaint within  **15 calendar days**  of the final interview if not satisfied with the results of my inquiry.

☐ Resolution was accomplished.  Negotiated settlement agreement, signed on _____ *(YYYYMMDD)*, is attached.

| PRINTED NAME OF EEO COUNSELOR | SIGNATURE OF EEO COUNSELOR |
|---|---|
| Bobbe Ford | FORD.BOBBE.JEAN.1229967530 ✪ |

| Attachments:<br>1. Extension of counseling *(if applicable)*<br>2. Copies of reviewed documents | DATE SUBMITTED TO EEO OFFICER *(YYYYMMDD)*<br>20151215 |
|---|---|

*DA FORM 7510, FEB 2004*

Exhibit B

## FORMAL COMPLAINT OF DISCRIMINATION

For use of this form, see AR 690-600; the proponent agency is OSA

### PRIVACY ACT STATEMENT (5 U.S.C. §552a)

| | |
|---|---|
| **AUTHORITY:** | Public Law 92-261 |
| **PRINCIPAL PURPOSE:** | Used for formal filing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical or mental disability, and/or reprisal by Department of the Army civilian employees, former employees, applicants for employment, and some contract employees. |
| **ROUTINE USES:** | Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (Congress, White House, Equal Employment Opportunity Commission) regarding the status of an EEO complaint or appeal; or (d) to adjudicate an EEO complaint or appeal. |
| **DISCLOSURE:** | Voluntary, however, failure to complete all appropriate portions of the form may lead to rejection of complaint on the basis of inadequate data on which to continue processing. |

| 1. NAME (Last, First, Middle initial) | 2. SOCIAL SECURITY NUMBER | 3. HOME TELEPHONE NUMBER |
|---|---|---|
| Hallman, James L. | | (59) 015144959370 |

| 4. HOME ADDRESS | 5. DO YOU CURRENTLY WORK FOR THE FEDERAL GOVERNMENT? |
|---|---|
| Eichen Strasse 36 <br> 67681 Sembach (Germany) | ☒ NO ☐ YES (If yes, complete 6, 6a, 6b, 7 and 8.) |

| 6. NAME OF AGENCY WHERE CURRENTLY EMPLOYED | 6a. WORK TELEPHONE NUMBER |
|---|---|
| | |

| 6b. EMPLOYER'S ADDRESS (Complete information to include office symbol). | 7. PAY PLAN/SERIES/GRADE |
|---|---|
| | 8. CURRENT JOB TITLE |

### SECTION I - COMPLAINT INFORMATION

9. REASON YOU BELIEVE YOU WERE DISCRIMINATED AGAINST (Check below all that apply. Identify specific race, color, sex, age, religion, national origin, and/or disability.)

☐ RACE _____   ☐ COLOR _____   SEX ☐ Male ☐ Female   ☒ AGE _68_

☐ DATE OF BIRTH _____   ☐ NATIONAL ORIGIN _____   ☐ RELIGION _____

☐ DISABILITY ☐ Mental _____   ☐ Physical _____   ☐ REPRISAL _____
(Date(s) and type of prior EEO activity)

10. EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST (If your complaint involves more than one basis of alleged discrimination, list and number each basis separately and provide specific factual information in support of each allegation of discrimination. If necessary, continue on page 2.)

I was suppose to be on annual/home leave from 2 Jul-24 Jul 15; however, I was placed on sick leave (deep depression due to greiving for my deceased wife having her 2nd anniversary on 4 Jun) from 26 Jun-3 Jul 15 (by Mr. James White my Dr. from family pratice). On 5 Jul 15, I retyped my leave form to reflect the new dates of 6 Jul-24 Jul 15, annual/homeleave. On 6 Jul 15, I went to my office (Registry of Motor Vehicles (RMV), building 216, Sembach Kaserne, Gy), to clear up some last minute work and get my leave form signed by Mr. Thomas Lorenzini for the new leave dates, since I now was flying to the US on 7 Jul 15. When Mr. Lorenzin came in a little later, he came into my office and stated " he was going to do a Business Based Action (BBA) and eliminate my position and seperate me". I informed Mr. Lorenzin that he would do what he wanted to do. On 7 Jul 15, I called Mr. Tim Maddox (RMV personnel specialist) from the airport (didn't know he was in a training class) and he finally returned my calls. I ask him if he could retire me in 60 days, since Mr. Lorenzini was BBAing my position (I assumed 30 Sep 15). He informed me he could and that I should call him when I decided what I wanted to do. I did infact call Mr. Maddox and requested that he complete my retirement package for 30 Sep 15, since I was being forced to retire, I assumed to coincide with the BBA on my position. On 27 Jul 15, I returned to the RMV and informed Mr. Lorenzini that Mr. Maddox had completed my retirement package and (continued)

EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST *(Cont'd)* *(If necessary, additional sheets may be used.)*

I would retire like he wanted. Mr. Lorenzini informed me that I should clear out my office and he would place me on administrative leave for up to 90 days. (Mr. Lorenzini did infact place me on administrative leave on 18 Sep 15-31 Oct 15 after I cleared out my office.) Since Mr. Lorenzini seemed more approachable I ask if I could change my retirement to 31 Oct 15 vice 30 Sep 15, since he was directing the BBA and it was impossible for me to clear out my office, ship my Household good, vehicle and get clearance to ship my privately owned firearms in 60 days. He agreed to the 30 day extension for my retirement. On 29 Jul 15, Mr. Lorenzini signed a letter of intent to reside in Germany which would coincide with my 1 Nov 15 retirement date, and would give me time to determine where I wanted to live. I tried to find the individual at the NAF CPAC, that Mr. Maddox said could assit me with my retirement. After several trips to the CPAC I was unable to locate the individual and went into the main NAF CPAC and was talking with Mr. John Owens, and he informed me that he had did the retirement package up. (continued on attach sheet)

| 11a. NAME OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED | 11b. ADDRESS OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED |
|---|---|
| USAREUR Registry of Motor Vehicles (RMV) | RMV, APO AE 09136 (Bldg 216, Sembach Kaserne) |

| 12a. HAVE YOU DISCUSSED THE ISSUE (s) IN BLOCK 10 WITH AN EEO COUNSELOR? ☐ NO ☒ YES *(If yes, complete 12b, 12c, and 12d below.)* | | |
|---|---|---|
| 12b. NAME OF EEO COUNSELOR | 12c. DATE OF INITIAL CONTACT WITH EEO OFFICIAL *(YYYYMMDD)* | 12d. DATE NOTICE OF RIGHT TO FILE A FORMAL COMPLAINT OF DISCRIMINATION RECEIVED *(YYYYMMDD)* |
| | 29 Oct 2015 | 17 Jan 2016 |

13. ELECTION OF REPRESENTATION

☐ ATTORNEY ☐ NON-ATTORNEY ☒ NO REPRESENTATION

NAME OF REPRESENTATIVE

ADDRESS

TELEPHONE NUMBER:     FAX:     E-MAIL:

14. WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT? *(State specific corrective action desired for each allegation.)*

Two and a half (2 1/2) years of my pay plus normal benefits (overseas post allowance/housing) and adjustment to my retirement pay to 30 June 2018, which is when I planned to retire. Or a job with a salary of $99,000.00 a year with benifits.

| 15a. HAVE THE ISSUES IDENTIFIED IN BLOCK 10 BEEN APPEALED TO THE MERIT SYSTEMS PROTECTION BOARD *(MSPB)* OR FILED UNDER A UNION NEGOTIATED GRIEVANCE PROCEDURE? ☒ NO ☐ YES *(If yes, complete 15b, 15c, and 15d below.)* | | |
|---|---|---|
| 15b. ☐ MSPB ☐ UNION NEGOTIATED GRIEVANCE | 15c. DATE FILED *(YYYYMMDD)* | 15d. MSPB OR UNION DOCKET NUMBER *(If known)* |

16. LIST NAME(s) OF WITNESS (ES) AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.

Mr. John Owens/NAF CPAC/ (49) 0631-411-5880) was the individual that Mr. Lorenzini told that I needed to call him, before I could sign my retirement packet effective 30 Nov 15. He was present when I talked to Mr. Lorenzini on 10 Aug 15, and could overhear what I said and repeated to Mr. Lorenzini. I also told him everything that Mr. Lorenzini had said and ask Mr. Owens what was going on with the BBA action. He only knew what he had heard me say on the telephone and what I had repeated from Mr. Lorenzini.

| 17a. SIGNATURE OF COMPLAINANT | 17b. DATE DA FORM 2590 SIGNED BY COMPLAINANT *(YYYYMMDD)* |
|---|---|
| | 18 January 2016 |

DA FORM 2590, FEB 2004

**3**

James L. Hallman

FORMAL COMPLAINT OF DISCRIMINATION (continued 18 Jan 16)

James L. Hallman

During this time Mr. Lorenzini had become more cordial again, and two (2) weeks had passed and
he had not spoke of my retirement, so I decided to submit my retirement packet for the end of
Nov (30 Nov 15), since Mr. Lorenzini had said I could have up to 90 days administrative leave
with pay and that would be the approximately timeframe it would take to clear my office out and
a couple of projects I had been working on (rating for employees, etc). I spoke with Mr. Owens
and requested he complete my retirement package effective 30 Nov 15, and Mr. Owens informed
me to return to the CPAC on 10 Aug 15, to sign the documents. On 10 Aug 15, I informed Mr.
Lorenzini I was going to the CPAC to sign my retirement packet. When I arrived at the CPAC
and met Mr. Owens, he informed me that I needed to call Mr. Lorenzini before I sign my
retirement packet. I ask who had called him and he said Mr. Lorenzini. I said Ok I would call
Mr. Lorenzini and he said he would dial the telephone number for me. He got Mr. Lorenzin on
the telephone and handed me the receiver (Mr. Owens was standing beside me during the
conversation). I ask Mr. Lorenzini what he needed and he stated "stop playing games, If you don't
retire 31 Oct 15, I will BBA your position earlier and place you on administrative leave without
pay until it takes effect". I repeated BBA, administrative leave without pay and retire by 31 Oct
15. Of course I agreed to his terms, since I couldn't afford to be placed on administrative leave
without pay and was not ready for this forced retirement. I spoke with Mr. Owens, and told him
what Mr. Lorenzini had said (BBA my position (again), administrative leave without pay, and the
forced retirement date 0f 31 Oct 15. I ask Mr. Owens, what was going on with this action that
Mr. Lorenzini was talking about "BBA, administrative leave without pay and forced retirement on
31 Oct 15. He informed me that he didn't know nothing about the situation Mr. Lorenzini was
talking about a BBA eliminating my position, administrative leave without pay and retirement
date of 31 Oct 15. There was also a Mr. Jackson (personnel specialist) present during the
conversation with Mr. Lorenzini (on the telephone) and Mr. Owens (in person) at the adjacent
desk. Mr. Owens informed me he could have the retirement packet for 31 Oct 15, ready for
signature on 11 Aug 15. I ask Mr. Owens who he had informed about my request for the 30 Nov
15, retirement date and he said Mr. Tim Maddox at RMV. When I returned to the office, Mr.
Lorenzini didn't even mention our conversation on the telephone or counsel me. On 11 Aug 15, I
returned to the CPAC and met Mr. Owens and signed my retirement packet. 16 Sep 15, was my
last day at the office and I was placed on paid administrative leave until my retirement on 31 Oct
15. I didn't want Mr. Lorenzini to place me on administrative leave without pay or do the BBA
and eliminate my position earlier than the 31 Oct 15, date he had directed my retirement on, so I
did not go to the EEO and file a complaint. On 29 Oct 15, I went to the EEO office and registered
my complaint, since Mr. Lorenzini could no longer take any additional action to impact my pay. I
also have been informed that Mr. Lorenzini did not in fact BBA and eliminate my position, but
hired a younger man to replace me in early Oct 15.

**4**

During my vacation in the US I was hospitalized in the VA Hospital in Fl, due to severe depression and grieving, for my wife of 44 years, and placed on suicide watch for 5 days. FL is one of the US states that has a mandatory suicide hospitalization program. Mr. Lorenzini's actions didn't help this situation and he knew my wife had passed away on 4 Jun 13.

Mr. Lorenzini stated I was not at my office on 6 Jul 15, since I was on leave.  Mr. Lorenzini signed my leave form on 6 Jul 15 (however, he dated it 3 Jul 15), which was a federal holiday and no one was at work).

---------------------------------END OF STATEMENT--------------------------------------

**5**

Exhibit C



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON, DC 20310-0111

SEP 1 2 2018

SAMR-DL

Denise Clark, Esquire
Clark Law Group, PLLC
1100 Connecticut Avenue, NW, Suite 920
Washington, DC 20036

> Complaint of James L. Hallman v.
>  Mark T. Esper, Secretary of the Army
> DA Docket Number: AREURHPFZ15OCT04186
> EEOC Case Number(s): 570-2016-01533X
>                                   570-2017-00065X

Dear Ms. Clark:

This is the Department of the Army's final decision in your client's (hereinafter "the Complainant") equal employment opportunity (EEO) complaint, which was filed on January 22, 2016 with the USAG Rheinland-Pfalz EEO Office.

## Final Decision

Pursuant to my authority to decide this matter on behalf of the Secretary of the Army, I find that the Complainant was not the victim of discrimination based upon the evidence in the case file and for the reasons cited below. Since the Complainant is not a prevailing party, he is not entitled to any relief, including attorney's fees or costs.

## Procedural and Factual Background

The Complainant claimed that he was the victim of discrimination based upon age (DOB                          ) and/or reprisal for prior protected Title VII activity when:

(1) On or about July 6, 2016 and August 10, 2015, Thomas Lorenzini, Registrar, told Complainant that if he did not resign, Mr. Lorenzini would eliminate his position through a business-based action (BBA); Complainant voluntarily retired and subsequently a younger person was placed in his position; and

(2) On January 27, 2016, Shawn Driscoll, Deputy Registrar, denied Complainant access to the building and required all official contact with employees to be coordinated through him.

I note that an investigation was conducted by the Department of Defense Investigations and Resolutions Directorate.  The Complainant was notified of the option to request either a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ) or a final Army decision based upon the evidence in the case file.  Complainant requested a hearing and his hearing request was processed by two different AJs under two different EEOC complaint numbers.  Thereafter, the Complainant alerted EEOC of the duplication and requested a final agency decision.  This decision is issued pursuant to the Complainant's request for a final agency decision based upon the evidence of record.

Complainant was a Deputy Registrar, NF-0301-04, assigned to Vehicle Registration prior to his retirement, effective October 31, 2015 (IF pp 85-89).  Statistical data shows fifty-four employees assigned to the Vehicle Registration Organization; all over the age of forty with the exception of seven employees, none of them the Deputy Registrar.  There is no record of Complainant filing a previous EEO complaint (IF pp 80-81, 83).

Complainant stated he began Federal Civil Service in 2010; a summary of his duties and responsibilities include being responsible for supervising five section chiefs over the day-to-day operations of the Registry of Motor Vehicles (RMV) and assuming responsibilities of the Registrar in the absence of the Registrar.  He has not participated in any prior EEO activity (IF pp 94-95).

Claim 1: On or about July 6, 2016 and August 10, 2015, Thomas Lorenzini, Registrar, told Complainant that if he did not resign, Mr. Lorenzini would eliminate his position through a business-based action (BBA); Complainant voluntarily retired and subsequently a younger person was placed in his position.

Complainant stated that on July 6, 2015, Thomas Lorenzini, Registrar, NF-0301-05, told him he was going to Business Base Action (BBA) his (Complainant's) position and be rid of him; Complainant responded, "Tom, you will do what you want to do."  On July 7, 2015, Complainant contacted Timothy Mattox, Human Resources Specialist, NF-0201-04, to process his retirement paperwork in sixty days (IF pp 97, 108, 124).

Complainant explained on July 27, 2015, Mr. Lorenzini informed him Mr. Mattox prepared the retirement documents and he (Complainant) would be placed on administrative leave with pay for up ninety days.  He told Mr. Lorenzini it would be impossible to ship his household goods and car, and obtain customs approval to import his firearms within ninety days; he asked if his retirement date could be changed to October 31, 2015.  Mr. Lorenzini agreed to the date change (IF p 98).

Complainant cited each time he spoke with Mr. Lorenzini about his retirement, he (Complainant) mentioned the BBA and Mr. Lorenzini never indicated he was not going to BBA his position (IF p 98).

Complainant stated he met with John Owens, Human Resources Assistant, NF-0203-03, on August 10, 2015 to sign his retirement documents believing his retirement date was going to be on November 30, 2015 (because Complainant had requested another extension). Mr. Owens informed him that Mr. Lorenzini wanted to speak with him before he signed the retirement documents. Mr. Lorenzini informed him that he would not approve his retirement date to be effective on November 30, 2015, and if he did not change the effective date back to October 31, 2015, he would BBA his position and place him on administrative leave without pay (IF p 98).

Complainant stated he asked Mr. Owens if he was aware of what was going on and Mr. Owens responded he was not. Mr. Owens told Complainant he would have the corrected documentation available for signature on August 11, 2015 (IF pp 98-99). Complainant explained he had a concern with the BBA of his position and elected to retire because he believed Mr. Lorenzini was going to eliminate his position (IF p 99). Complainant believed this incident occurred based on his age because Mr. Lorenzini hired Mr. Driscoll (age: mid-fifties) in early October 2015 as the Deputy Registrar.

Claim 2: On January 27, 2016, Shawn Driscoll, Deputy Registrar, denied Complainant access to the building and required all official contact with employees to be coordinated through him.

On December 11, 2015, Mr. Driscoll, Deputy Registrar, NF-0301-04, sent an email to employees stating Complainant was no longer an employee with the organization and Complainant was no longer authorized to access the business offices. Additionally, any personal contact with Complainant was to take place outside the daily operations of the organization, and any official contact with Complainant would need to be coordinated through him (Mr. Driscoll) (IF p 91). Complainant acknowledged he was not an employee at the time the email was sent and he did not speak with Mr. Driscoll regarding the email. However, Complainant wanted access to the building to obtain documents for his personal operating vehicle (POV) and to clear his firearms (IF p 102).

Complainant contended anyone could enter the building to meet with customer service or the weapons specialist and he did not believe authorization was needed to enter for those purposes (IF p 102). Complainant believed he was denied access because RMV did not want him to know what was going on with his initial complaint, which had been dismissed (IF p 103; see Notice of dismissal at IF p 65).

## Legal Framework

In any proceeding, either judicial or administrative, involving a charge of discrimination, it is the complainant's burden to prove that prohibited discrimination was the motivating factor in the actions or policies challenged. To satisfy this burden by circumstantial evidence, the complainant must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973);

- 4 -

*Furnco Construction Company v. Waters*, 438 U.S. 567 (1978).  This means that the complainant must present a body of evidence such that, were it not rebutted, the finder of fact could conclude that unlawful discrimination did occur.

The analysis in *McDonnell Douglas* prescribes that if the complainant meets his or her burden of presenting a *prima facie* case, then the employer or Agency must articulate some legitimate, nondiscriminatory reason(s) for its actions.  That is, the employer must ". . . introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).  Once the employer or Agency carries this burden of production, the presumption of discrimination created by the *prima facie* finding "drops from the case."

The complainant then must demonstrate that the proffered reason was not the true reason for the employment decision and that unlawful discrimination was.  The complainant retains the ultimate burden of persuading the finder of fact that the Agency intentionally discriminated against the complainant.

To establish a *prima facie* case of discrimination based upon age, the Complainant must show:  (1) that he is a member of a group(s) protected by Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act (ADEA), as amended; (2) that he was adversely affected by an agency personnel decision, action or change; and (3) that he was treated less favorably than similarly situated individuals outside of his protected group(s) or, in the alternative, that there is some other evidence raising an inference of prohibited discrimination.  In cases involving a claim of age discrimination, the Complainant must show that age was a determining factor in the decision to take the adverse action against him.

The central question in a constructive discharge case is whether the employer, through its unlawful discriminatory behavior, made the employee's working conditions so difficult that any reasonable person in the employee's position would feel compelled to resign. *Carmon-Coleman v. Dep't of Defense*, E.E.O.C. Appeal No. 07A00003, 2002 WL 736291, at *5 (Apr. 17, 2002).  The Commission has established three elements which a complainant must prove to substantiate a claim of constructive discharge: (1) a reasonable person in the complainant's position would have found the working conditions intolerable; (2) conduct that constituted discrimination against the

complainant created the intolerable working conditions; and (3) the complainant's involuntary resignation[1] resulted from the intolerable working conditions.  See *Walch v. Dep't of Justice*, E.E.O.C. Request No. 05940688, 1995 WL 242586, at *4 (Apr. 13, 1995).

Title VII of the Civil Rights Act of 1964, as amended, forbids employer retaliation against employees for making a charge, testifying, assisting, or participating in a Title VII investigation, proceeding, or hearing. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). To establish a *prima facie* case of retaliation based on indirect evidence, a Complainant must show: (1) participation in protected EEO activity; (2) the Agency knew of the protected EEO activity; (3) the Agency subsequently took an adverse, retaliatory action; and a nexus exists between the protected activity and the adverse treatment. *Bourget v. Dep't of the Army*, EEOC Appeal No. 0120120994 (August 20, 2013).  A nexus may be shown by evidence that the adverse treatment followed the protected activity within such a period of time and in such a manner that a retaliation motive is inferred. *Moore v. Dep't of Health & Human Services*, EEOC Appeal No. 0120111675 (April 30, 2010).

Pursuant to the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), "[i]f the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. Then, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." To establish pretext, a complainant must prove by a preponderance of the evidence that retaliation for the prior protected activity more likely than not caused the challenged actions. *Petitioner v. Interior*, EEOC Petition No. 0320110050 (July 16, 2014).

### *Prima Facie* Case Analysis

In the instant case, Complainant's claim of constructive discharge meets none of the required elements.  Complainant provided no evidence that his working conditions were intolerable or that the possibility of a BBA presented a "difficult or unpleasant" situation which caused Complainant to believe retirement was the only option.  He does not allege management's BBA threat was discriminatory; rather, he alleges the hiring of his replacement was discriminatory.  Further, no movement was made on the BBA, so

---

[1] When a retirement is "facially voluntary" as part of the *prima facie* case, the employee must show the retirement was in fact involuntary. *Lasley v. Veterans Admin.*, 789 F. Supp. 1468 (E.D. Mo. 1992).  The appropriate test is whether a reasonable person would have felt compelled to resign under the circumstances.  Further, as it relates to age discrimination and involuntary retirement, the employee must show that the agency made working conditions so "difficult and unpleasant that a reasonable person in his position would have resigned." *Moore v. Dep't. of Treasury*, EEOC Appeal No. 01870901 (December 14, 1987).  Additionally, the employee must show that age was a determining factor in the agency's decision to effect his removal; the option of retirement in the face of involuntary termination is not enough to make a sufficient case of age discrimination. *Lasley*, supra, 789 F. Supp. 1468 at 521.

his resignation was not a result of a BBA effectuation; rather, his decision to retire was a result of a concern of future harm as a result of the BBA which never materialized.

However, the EEOC has stated that in cases when the agency has established a legitimate, nondiscriminatory reason for its actions in meeting its burden on the merits, consideration of a *prima facie* case is not necessary. The EEOC has stated that the issue of discrimination may be resolved by determining whether the agency's reasons were a pretext for discrimination. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1993); see also *Thompson v. GSA*, EEOC Appeal No. 01953924 (March 13, 1997). Accordingly, we will proceed with the analysis for both claim 1 and claim 2, assuming for argument's sake, that a *prima facie* case of discrimination has been established.

### Management's Nondiscriminatory Reasons

Assuming, for the sake of argument, Complainant met his burden to establish a *prima facie* case on the bases claimed, management's responses have been examined and found to be legitimate and nondiscriminatory and the record does not support Complainant's allegations of constructive discharge, age discrimination, or retaliation.

Claim 1: On or about July 6, 2016 and August 10, 2015, Thomas Lorenzini, Registrar, told Complainant that if he did not resign, Mr. Lorenzini would eliminate his position through a business-based action (BBA); Complainant voluntarily retired and subsequently a younger person was placed in his position.

Management provided nondiscriminatory explanations to Complainant's allegations of constructive discharge. Mr. Lorenzini (age: born 1947), stated he is the same age as Complainant. Complainant was his best and oldest friend since they met in 1972 and served as his deputy for seven or eight years. He is unaware of Complainant's previous EEO activity (IF p 109). Mr. Lorenzini stated he offered retirement to Complainant for Complainant's and the organization's benefit. However, Colonel (Col.) Arturo Horton, Provost Marshall, Commander 18th Military Police Brigade, did not approve a reduction of the position, and thereafter there were no other discussions regarding the BBA of Complainant's position (IF pp 110, 112).

Mr. Lorenzini explained Complainant was stateside for most of July 2015 and submitted a backdated doctor's note to excuse his time out. Mr. Lorenzini stated Complainant was having difficulties and recommended a business based action (BBA) as a way for Complainant to be placed in another available position of the same grade within the organization without embarrassment (IF p 110). Mr. Lorenzini explained Complainant had an unreliable attendance record and had come to work inebriated on more than one occasion. Further, Complainant's drinking problem had resulted in more than one arrest while in Germany (IF pp 110-111). Mr. Lorenzini stated, had it not been for their friendship, Complainant would have been terminated for cause due to

Complainant's off-duty conduct.  Mr. Lorenzini first contemplated the BBA in December 2014 when Complainant told him he planned to retire in the summer of 2015; Mr. Lorenzini discussed the BBA in July 2015 with his supervisor.  The organization was operating in the red, so suggestions to keep the fund solvent were welcome.  Mr. Lorenzini did not have a deputy from 1992 until Complainant was hired, and he believed he could operate without someone in that position (IF p 112).

When Complainant informed Mr. Lorenzini he wanted to retire on October 31, 2015, he told Complainant he would give him paid administrative leave beginning September 18, 2015, so that Complainant could clear his office and move his HHG. However, when Complainant went to the Civilian Personnel Office (CPO), he decided to change his retirement date to December 1, 2015 (IF p 111).

Mr. Lorenzini told Complainant he had the option to retire on any date but administrative leave would not be extended beyond October 31, 2015; thereafter, Complainant took administrative leave and maintained the October 31, 2015 retirement date (IF p 111).  Mr. Lorenzini explained that Mr. Driscoll was hired on October 5, 2015 as the Deputy Registrar after Complainant's retirement documentation was signed and approved (IF p 112).  Mr. Lorenzini explained age and previous EEO activity were not factors in his actions regarding the allegation at issue (IF p 113).

Mr. Mattox (age: born 1971), stated Complainant was his first level supervisor, he perceived Complainant to be sixty-eight years old, and he was unaware of Complainant's previous EEO activity (IF p 125).  Mr. Mattox explained a BBA is an involuntary action taken to adjust personnel resources.  On July 1, 2015, Mr. Lorenzini inquired about the procedures for a BBA of the Deputy Registrar position and later told Mr. Mattox he was awaiting approval of the BBA from Col. Horton; however, Col. Horton did not approve the BBA for the position (IF p 126).  On July 20, 2015, Complainant asked Mr. Mattox for a retirement calculation with a retirement date of September 30, 2015, and the retirement projection was issued to Complainant on July 23, 2015 (IF p 126).

Mr. Mattox stated Mr. Lorenzini did not tell Mr. Owens to change Complainant's retirement date.  On the date in question, Mr. Owens told Mr. Lorenzini that Complainant had requested December 1, 2015 as his retirement date.  Mr. Lorenzini told Mr. Owens that December 1, 2015 was not the retirement date he and Complainant had agreed upon and asked for Complainant to call him once he arrived for his appointment (IF pp 127, 134).  Subsequently, Mr. Lorenzini told Complainant he was not going to extend the administrative leave until December 1, 2015, and that Complainant would need to return to work.  Complainant then told Mr. Lorenzini that he would change his retirement date back to October 31, 2015 (IF pp 127, 134).  Mr. Owens (age: born in 1964), stated he perceives Complainant to be fifty-seven years old and he is unaware of Complainant's previous EEO activity; Mr. Owens did not have any organizational relationship to Complainant (IF pp 132-133).  Mr. Owens stated he did

not speak directly with Mr. Lorenzini; after Complainant talked with Mr. Lorenzini, Mr. Owens ran a retirement projection for an effective date of October 31, 2015 at Complainant's request (IF p 134).

    Claim 2: On January 27, 2016, Shawn Driscoll, Deputy Registrar, denied Complainant access to the building and required all official contact with employees to be coordinated through him.

    Mr. Lorenzini stated Mr. Driscoll's email did not deny Complainant access to the building and, in fact, Complainant was in the public business office a couple of times after the email was sent (IF p 113). Mr. Lorenzini explained that Personally Identifying Information (PII) in open storage and standard protocol is to change all security codes whenever someone with access departs; Mr. Driscoll sent the email to remind staff of the rules for building access (IF pp 113-114).

    Mr. Driscoll (age: born 1961), stated he was unware of Complainant's age and previous EEO activity, and he did not have any organizational relationship to Complainant (IF pp 118-119). Mr. Driscoll stated he never denied Complainant access to the building. He sent an email to the Vehicle Registration Staff supervisors restricting Complainant's access to their business offices located behind controlled doors and to the warehouse; he also stated in the email that official contact would be coordinated through him (IF p 119). Mr. Driscoll explained their business offices contain open storage of documents containing the PII of their customers and access is restricted; he cited on two different occasions after he sent the email, Complainant visited the Customer Service desk located in building 216 (IF p 120).

    Mr. Driscoll explained he required coordination through him because Complainant failed to clear his personal weapon registration prior to his retirement and he wanted to know when Complainant visited Customer Service to do so; to date, Complainant had not successfully cleared his privately owned weapons registration (IF p 120). Mr. Driscoll explained his actions regarding this allegation were not based on age or prior EEO activity; his actions were based solely to protect PII (IF p 121).

    Mr. Mattox stated it was protocol to deny retirees and other employees access to the restricted areas of the building; the security codes on the doors are changed when employees leave employment to protect PII information stored behind the security doors (IF p 128).

    Regarding the Complainant's allegations of retaliation, Mr. Driscoll stated all former and retiring employees, like the Complainant, are denied access to areas of the building where personally-identifiable information is stored. The Complainant lost the ability to access these areas of the building as of his October 2015 retirement date, well before his January 22, 2016 contact with the EEO office.

Management's explanations for its actions are reasonable and nondiscriminatory. See *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### Pretext

It remains for you to show that in spite of the articulated non-discriminatory explanation, an overall inference of discrimination can be discerned by a preponderance of the evidence. *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714-17 (1983). In other words, you must show that the Army was "more likely motivated by discriminatory reasons, [citation omitted]" than not. *Hill v. Social Security Administration*, EEOC Appeal No. 01970512 (June 8, 2000). Or, you may show that the proffered explanation of the Army is unworthy of credence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Essentially, the record must show that the Army articulated a false reason and that its real reason was discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). However, courts have held that it does not matter whether the information upon which management acted was correct. An employer may act for a good reason, a bad reason, or no reason at all, provided that the employer is not motivated by a discriminatory reason. *See Sweeney v. Department of the Army*, EEOC Appeal No. 01942331 (March 10, 1995) *citing Nix v. WLCY Radio/Rahall*, 738 F.2d 1181, 1187 (11th Cir. 1984).

At this stage of the analysis, according to the United States Supreme Court, the burden of the Army is not onerous. *Burdine, supra*, 450 U.S. at 254-256. See also *Rosser v. Department of Transportation*, EEOC Appeal No. 01970650 (December 12, 1999). Even if you showed, for the sake of argument only (because you have not done so), that the Army engaged in an action that was an unsound business decision, was unfair, or was motivated by an ill feeling or arbitrariness, that is insufficient to show pretext. *Keyes v. Secretary of the Navy*, 853 F.2d 1016, 1026 (1st Cir. 1988).

Complainant has not provided, nor does the record reveal, any persuasive evidence to suggest that it is more likely than not that management's legitimate, nondiscriminatory explanations in this matter are false or otherwise unworthy of credence. Complainant failed to provide any testimony or persuasive evidence to show the threat of the BBA was due to his age. Rather, the record supports Mr. Lorenzini's nondiscriminatory explanation that he suggested the BBA as a sound business decision. Complainant rebutted that allegations regarding his problems with attendance and alcohol were allegations which were investigated by the Office of Inspector General and found to be unsubstantiated. However, Complainant does not provide any discriminatory motive except that his replacement was younger than he. Further, it should be noted that in his rebuttal, Complainant alleged Mr. Lorenzini threatened to BBA the position if Complainant did not change his retirement date back to October 31; however, this allegation is slightly different from management's and Complainant's original statements: Complainant was given the choice to retire or be subject to a BBA

and, if he delayed his retirement, his administrative leave would not be extended. Complainant does not rebut management's explanation that Complainant had notified management he was considering a June 2015 retirement, so management's offering a BBA as an alternative to retirement as the summer approached does not appear motivated by discriminatory animus.

Further, Complainant's allegation does not meet the requirements of a constructive discharge claim, as discussed above. Complainant has the burden to show his involuntary resignation was the result of being subjected to working conditions, caused by discriminatory conduct, which a reasonable person would find intolerable; however, Complainant was unable to show such working conditions. He does not allege harassment and the talk of a BBA was just that – talk. No personnel action was ever processed. The evidence clearly shows Complainant voluntarily retired and during the process became upset when management would no longer extend paid administrative leave to delay the retirement date.

Regarding claim 2, there is no evidence to suggest management's explanation for denying Complainant access to the building after his retirement began processing is false. His access was limited once he had submitted his retirement package; Complainant's allegation of retaliation cannot prevail, as he had not participated in the EEO process until months later. Complainant rebuts management's explanation by stating customers have access to certain areas with PII and at least one former employee was allowed access to the building for a period of time; however, Complainant defends Mr. Driscoll by stating Mr. Driscoll "has no knowledge of the above RMV history." This rebuttal does not challenge management's legitimate explanation, which specifically applies to former and soon-to-be-former employees, and clearly is not retaliation for Complainant's subsequent EEO activity.

You have not shown that the explanation of the Army for its actions was simply a pretext for discrimination. Mere speculation and/or conjecture that the Army had a discriminatory motive without proof are insufficient for proving pretext. *See Autry v. North Carolina Department of Human Resources*, 820 F.2d 1384, 1386 (4th Cir. 1987); ("the fact-finder must not be permitted to engage in surmise and conjecture but rather causation must be shown by probability rather than mere possibility"); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241-46 (4th Cir. 1982). A suspicion or mere allegation of a discriminatory motive is not enough.

Your allegations are general and unspecific as they relate to your efforts to provide a connection between the action taken and unlawful discrimination. They are, furthermore, unsupported by the totality of the record. In other words, there is nothing that shows by a preponderance of the evidence that the legitimate explanations given by the Army were pretexts for discrimination. *Hammons v. HUD*, Request No. 05971093, EEOC Appeal No. 01955704 (May 5, 1999).

Other than your initial assertions, you have presented no direct evidence, no corroborating testimony from another witness, and no documentation which would confirm your claim that management's actions were based upon your protected group status. Hence, management's nondiscriminatory reasons have not been proven to be a pretext for illegal discrimination.

Complainant fails to provide any evidence showing management's intent was to remove him from office in order to bring a younger employee into the position.

### Conclusion

Pursuant to my authority to decide these matters on behalf of the Secretary of the Army, I find that the Complainant was not the victim of discrimination based upon age (DOB 2/11/1947), and/or in reprisal for engaging in protected Title VII activity based upon the evidence in the case file and for the reasons cited above.

Since the Complainant is not a prevailing party, although represented by an attorney, he is not entitled to any relief, including attorney's fees or costs. Moreover, attorney's fees are not payable during the administrative processing of age discrimination complaints.

If the Complainant is not satisfied with this decision, his appeal rights follow:

### APPEAL RIGHTS

1. The Complainant may file a Notice of Appeal with the Equal Employment Opportunity Commission (EEOC or Commission), Office of Federal Operations (OFO) at any time up to thirty (30) calendar days from receipt of this Final Agency Decision (FAD). Please use EEOC Form 573 (Enclosure 1) and forward to:

> Director
> U.S. Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 77960
> Washington, DC  20013
> Fax No.  202-663-7022

As an alternative to mailing the appeal, the appeal may be hand-delivered to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> One NOMA Station
> 131 M Street N.E., Suite 5SW12G
> Washington, DC  20507-0004

Case 3:19-cv-00308-SMY   Document 10   Filed 02/26/19   Page 31 of 41   Page ID #67
- 12 -


2. Any statement or brief in support of your appeal must be submitted to the OFO within 30 calendar days of filing the notice of appeal.  The OFO will accept statements or briefs in support of an appeal by facsimile transmittal, provided they are no more than 10 pages long.

3. At the same time that information is provided to the Commission, the Complainant **MUST** also furnish a copy of the appeal, and any supporting statements or briefs, to the Agency.  In or attached to the appeal and any supporting statements or briefs to the Commission, the Complainant **MUST** certify the date and method by which service was made to the Agency (Director, Equal Employment Opportunity Compliance and Complaints Review).

> Director
> Department of the Army
> Equal Employment Opportunity Compliance and Complaints Review
> ATTN:  SAMR-EO-CCR
> 5825 21st Street
> Building 214, Room 129
> Fort Belvoir, VA  22060-5921
> Fax No.  (703) 805-8722

Please also furnish a copy of the appeal and supporting statements or briefs to the Agency Representative at the address listed on the Certificate of Service (Enclosure 2) at the same time the appeal is filed.  The regulation providing for appeal rights is contained in Title 29, C.F.R., Part 1614 Subpart D.  The Code of Federal Regulations is available at http://www.eeoc.gov/federal/directives/1614-final.cfm.

4. The thirty (30) calendar day time period within which to appeal will be calculated from the date of your receipt of this FAD.  If an appeal is not filed within the prescribed time limit, the appeal may be dismissed as untimely by the Commission. The Commission will deem the appeal filed on the day it is faxed, delivered in person, or postmarked.  In the absence of a postmark/legible postmark, the appeal will be deemed filed on the date it is received.

5. If the Complainant is represented by an attorney of record, the thirty (30) calendar day time period within which to appeal shall be calculated from the date of receipt of the FAD by the attorney.  In all other cases, the time within which to appeal shall be calculated from the Complainant's receipt of the FAD.

## CIVIL ACTION

1. <u>Deadline to File Suit</u>.  In lieu of an appeal to the Commission, the Complainant may file a lawsuit in the appropriate United States District Court.

The Complainant is authorized under Title VII, the Age Discrimination in Employment Act (ADEA), and the Rehabilitation Act to file a civil action in an appropriate United States District Court:

    a. Within ninety (90) calendar days of receipt of the FAD on an individual or class complaint if no appeal to the Commission has been filed;

    b. Within ninety (90) calendar days of receipt of the Commission's final decision on appeal; or,

    c. After 180 calendar days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

The Complainant must file the lawsuit **WITHIN NINETY (90) CALENDAR DAYS** of the date of receipt of this FAD, unless the Complainant has appealed the case to the Commission. Failure to file a lawsuit within ninety (90) calendar days of receipt of this FAD may result in the dismissal of the suit. Filing a civil action shall terminate Commission processing of the appeal. If a private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing.

    3. Special Deadline for Age Discrimination Civil Actions. As to any claim based on the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a), not only must you file suit within ninety (90) calendar days of receipt of this decision, you MAY only have SIX YEARS FROM THE DATE OF THE ALLEGED DISCRIMINATION TO FILE allegations of age discrimination in a lawsuit. See, 29 U.S.C. 633a (f); and 28 U.S.C. 2401. Filing an appeal to the Commission will not stop that time from running. You may be barred from filing such a suit, should you allow the time limit to expire, even if you have an appeal in progress with the Commission.

    4. Proper Defendant. You are further notified that if the Complainant files a civil action, he **MUST** name the appropriate Department or Agency head as the defendant and his or her official title. **DO NOT NAME JUST THE AGENCY OR DEPARTMENT**. Failure to name the head of the Department or Agency or to state his or her official title may result in the dismissal of the case. The appropriate agency is the Department of the Army. The head of the Department of the Army is the Honorable Mark T. Esper, who is the Secretary of the Army.

## RIGHT TO COUNSEL

    If the Complainant chooses to file a lawsuit and does not have an attorney or is unable to obtain one, the Complainant may request the court to help the Complainant locate an attorney to represent the Complainant. The clerk's office of the nearest U.S. District Court is the best place to contact in order to find out if the court can help the Complainant locate an attorney. If the Complainant cannot afford an attorney, the

clerk's office will explain how the Complainant may request the court to appoint an attorney to represent the Complainant without payment of any fees or costs.  If the Complainant needs this kind of help, the Complainant should contact the court as soon as possible, but no later than ninety (90) calendar days from the date the Complainant receives this FAD.  THE NINETY (90) CALENDAR DAYS TO FILE SUIT WILL NOT BE EXTENDED WHILE THE COMPLAINANT ATTEMPTS TO OBTAIN AN ATTORNEY.  IF THE COMPLAINANT IS GOING TO FILE A LAWSUIT, THE COMPLAINANT MUST DO SO WITHIN NINETY (90) CALENDAR DAYS WITH OR WITHOUT AN ATTORNEY.

## DOCKET NUMBER

The docket number identified on Page 1 of this letter should be used on all correspondence.

Sincerely,

Spurgeon A. Moore
Director, Equal Employment Opportunity
Compliance and Complaints Review

Enclosures

000014

# NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | _____ Yes;  Date Received _____(Remember to attach a copy)<br>_____ No<br>_____ This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | _____ No<br>_____ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | _____ No<br>_____ Yes **(Attach a copy of the civil action filed)** |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

EEOC Form 573 REV 1/09

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1.  **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001
2.  **AUTHORITY**: 42 U.S.C. § 2000e-16
3.  **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4.  **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.
5.  **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

**DEPARTMENT OF THE ARMY**
**EQUAL EMPLOYMENT OPPORTUNITY COMPLIANCE**
**AND COMPLAINTS REVIEW**

| | |
|---|---|
| James Hallman | ) |
| Complainant | ) |
| | ) |
| | ) DA Docket No.: AREURHPFZ15OCT0 4186 |
| v. | ) |
| | ) EEOC Case No(s).: 570-2016-01533X |
| Mark T. Esper, Secretary of the Army | )                       570-2017-00065X |
| Agency | ) |
| | ) |

# CERTIFICATE OF SERVICE

     I hereby certify that on the date shown below, I transmitted the Army's Final Agency Decision, with EEOC Form 573 (Enclosure 1), and this Certificate of Service (Enclosure 2), to the following parties:

**_Certified Mail - Return Receipt Requested_**

James Hallman
3220 Forest Hill Drive
Hapeville, GA 30354

Denise M. Clark, Esq.
Clark Law Group, PLLC
1100 Connecticut Ave, NW, Ste 920
Washington, DC 20036

**_Electronic Mail_**

Department of the Army – USAG Rheinland-Pfalz
IMRP-EEO Rhein Ordinance Barracks
ATTN: Unit 23152 Bldg 2925 (Rolando Monsivais, EEO Officer)
APO AE 09054-3152
rolando.n.monsivais.civ@mail.mil

Enclosure 2

- 2 -

Chief, Labor and Employment Law
Wiesbaden Legal Center
ATTN: Unit 29351 Box 32, Bldg 1023N (Judith Fishel, Agency Representative)
APO AE 09014
judith.a.fishel.civ@mail.mil

HQ U.S. Army Europe
Equal Employment Opportunity Office
ATTN: Unit 29351, Bldg 1067, Rm 128 (Ronald Vitiello, EEO Director (Acting))
APO AE 09014-9351
ronald.l.vitiello.civ@mail.mil

*Regular Mail*

Hon. Danielle J. Hayot
U.S. Equal Employment Opportunity Commission
Washington Field Office
131 M Street, N.E., Ste. 4NW02F
Washington, DC 20507

SEP 1 2 2018
_____
Date

_____
EEO Specialist

Exhibit D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES HALLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18 C 8146 |
| | ) |
| MARK T. ESPER, SECRETARY | ) Judge Guzmán |
| OF THE ARMY, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF JUDITH A. FISHEL

1.      I, Judith A. Fishel, make the following declaration in accordance with 28 U.S.C. §1746. I am aware that this declaration may be filed in the United States District Court for the Northern District of Illinois, and that this declaration is the legal equivalent of a statement under oath. I make this declaration based on my knowledge and on information available to me in my official capacity.

2.      If called as a witness, I would be competent to testify to the following:

a.      I am the labor attorney for Wiesbaden Legal Center, for the United States Army at Wiesbaden, Germany. In this capacity, I am aware that Mr. James Hallman was a Non-Appropriated Fund (NAF) employee and I am also familiar with the location of personnel records for NAF employees.

b.      The location of personnel records for NAF employees as stated on Mr. Hallman's last DA Form 3434, Notification of Personnel Action – Nonappropriated Funds Employee, is the National Personnel Records Center, which is located at 1441 Boulder Boulevard, Valmeyer, Illinois 62295.

1

        c.     Valmeyer, Illinois, is about 330 miles south of Chicago and is located in Monroe County, Illinois.

     I declare under penalty of perjury that the above statement is true and correct to the best of my knowledge.

Date:   February 25, 2019

Judith A. Fishel
Labor Attorney
Wiesbaden Legal Center
Wiesbaden, Germany

2

## NOTIFICATION OF PERSONNEL ACTION - NONAPPROPRIATED FUNDS EMPLOYEE

For use of this form, see AR 215-3; the proponent agency is DCS, G1

| 1. NAME (Last, first, MI) (Mr. or Ms.) | | 2. CITIZENSHIP (1 - US; 2 - Non-US Citizen; 3 - Local National) | | 3. DATE OF BIRTH (Yr, Mo, Day) | 4. SSN |
|---|---|---|---|---|---|
| HALLMAN, JAMES L | | | 1 | | |
| 5. MILITARY STATUS (1 - None; 2 - Retired; 3 - None) | 2 | 6. DEPENDENT STATUS (1 - Military; 1 - Civilian 3 - None) | 3 | 7a. SCD - LEAVE  1986 MAR 29 | 7b. SCD - LS  1986 MAR 29 |
| 8. VETERAN'S PREFERENCE? | | 9. SPOUSE EMPLOYMENT PREFERENCE? | | 10. FAIR LABOR STANDARD ACT (FLSA) | |
| Y - Yes   N - No | Y | Y - Yes   N - No | N | 11 - Exempt; 2 - Nonexempt) | 1 |
| 11. CODE  A043 | | 11b. NATURE OF ACTION (including Employment Category)  Separation-Retirement | | RET | 12. EFFECTIVE DATE (Yr, Mo, Day)  2015 OCT 31 |

| 13. FROM (Position Title, Number, and Authorization) | 14. PAY PLAN AND OCC CODE | 15 b. STEP OR RATE (NA; NL; NS only) |
|---|---|---|
| DEPUTY REGISTRAR | NF-0301 | 16. ANNUAL SALARY OR HOURLY RATE |
| 0866-2173299 | | $99,970.00PA |
| ZV-TM-01G1 | 15a. GRADE OR PAY LEVEL  04 | |

| 17 a. CODE/NAME AND LOCATION OF EMPLOYING NAFI | 17 b. STANDARD NAFI NUMBER |
|---|---|
| Supplemental Fund (Assigned by HQDA)  Vehicle Registration | ZVGTM01G1 |

| 18. TO (Position Title, Number, and Authorization) | 19. PAY PLAN AND OCC CODE | 20 b. STEP OR RATE (NA; NL; NS only) |
|---|---|---|
| | | 21. ANNUAL SALARY OR HOURLY RATE |
| | 20a. GRADE OR PAY LEVEL | |

| 21 a. CODE/NAME AND LOCATION OF EMPLOYING NAFI | 21b. STANDARD NAFI NUMBER |
|---|---|
| | |

| 23. DUTY STATION  SEMBACH / GERMANY | 24. LOCATION CODE  GM-8435-000 |
|---|---|

25. REMARKS

Action Authority: AR 215-3.

SF-8 issued.

Your records will be retained at THE KAISERSLAUTERN CPAC, NAF CIVILIAN PERSONNEL, UNIT 23152, APO AE 09227 until 31-OCT-2016. After that date, they will be sent to National Personnel Records Center, (Civilian Personnel Records), 1411 Boulder Boulevard, Valmeyer, IL 62295.

Reason for resignation: VOLUNTARY RETIREMENT.

Forwarding Address: EICHENSTRASSE 36 SEMBACH GERMANY 67681.

Pay lump sum annual leave.

REQUEST NUMBER: 1SSEP0NAFH0987704, DA3473 ATTACHED.

UNUSED SICK LEAVE BALANCE MAY BE CREDITABLE TOWARDS RETIREMENT ANNUITY.

Your feedback counts. Please take a few moments to complete the Army Exit Survey. Survey Link: http://cpol.army.mil/library/survey/exitsurvey.

| 16. SERVICING CPU (Complete Address)  PECH-EUR-K  Kaiserslautern Civilian Personnel Advisory Center | 17. SIGNATURE (Or other authorization) AND TITLE  Erin J. Freitag  HUMAN RESOURCES OFFICER  (OR OTHER AUTHORIZING OFFICIAL) |
|---|---|
| | 18. DATE  2015 NOV 09 |

DA FORM 3434, OCT 12

000034